IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN J. KORESKO, V,           :    CIVIL ACTION
et al.,                       :    NO.  05-3800
                              :
          Plaintiffs,         :
                              :
          v.                  :
                              :
NATIONWIDE LIFE,              :
INSURANCE COMPANY,            :
                              :
          Defendant.          :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        DECEMBER 6, 2005


          Before the Court are plaintiffs' motion to reassign the
case to another Judge of this Court and defendant's motion to
transfer the case to the Southern District of Ohio.  For the
reasons that follow, the motion to reassign will be denied and
the motion to transfer will be granted.


I.   BACKGROUND

          Plaintiffs, John J. Koresko and Penn-Mont Benefit
Services, Inc. ("Penn-Mont"), consistent with state practice,
filed a praecipe for writ of summons in the Court of Common Pleas
of Montgomery County, Pennsylvania on June 23, 2005 against
Defendant, Nationwide Life Insurance Company ("Nationwide"),
asserting both state and federal claims.  On July 22, 2005,
Nationwide removed the case to this Court.

          Once in this Court, Koresko and Penn-Mont filed a

complaint against Nationwide on September 6, 2005, alleging misappropriation of trade secrets, and breach of agreements. Koresko and Penn-Mont contend that between March 2000 and the present, Koresko developed an alternative methodology for funding a pension plan called the Variable 412(i) Plan (the "Plan"). The Plan was to be marketed and distributed exclusively by Penn-Mont. Koresko and Penn-Mont state that Koresko met with Nationwide at Nationwide's office in Ohio several times in 2001 and 2002 regarding the Plan, and that in June 2002, Nationwide signed a Confidentiality Agreement regarding the Plan. Koresko and Penn-Mont contend that Nationwide was on written notice that Koresko had filed a business process patent application for the Plan in 2001.[1]

Koresko and Penn-Mont allege that, in 2005, they became aware that Nationwide was violating the Confidentiality Agreement by improperly using and disclosing plaintiffs' trade secrets. In June 2005, Koresko notified Nationwide that he believed Nationwide was violating the Confidentiality Agreement and misappropriating trade secrets in plaintiff's patent application, and, after an email exchange between the parties, sent a cease-and-desist demand on June 15, 2005. The cease-and-desist demand stated as follows:

---

[1] This patent, Patent No. 6,963,852, was issued on November 8, 2005.

> I would like your people to come to my offices for a
> meeting on or before June 30, prepared and authorized
> to agree to the license fees.  The initial license fee
> will be at least $1.5 million, if we decide to honor
> our previous quote, and there will be an ongoing fee
> based upon the percentage of sales.

The letter also stated that Koresko was prepared to seek
injunctive relief if Nationwide did not comply, and that "[o]ur
complaint is substantially complete."  Nationwide did not meet
with Koresko, but instead filed suit in the Southern District of
Ohio on June 22, 2005, seeking a declaratory judgment that the
information in the patent application filed by Koresko is not
protectable as a trade secret, and that Nationwide has not
misappropriated or infringed Penn-Mont's or Koresko's trade
secrets or confidential information.[2]

Koresko and Penn-Mont seek compensatory and punitive
damages, and attorneys' fees and costs.  Koresko and Penn-Mont
also seek a preliminary injunction requiring Nationwide to cease
and desist using Koresko's and Penn-Mont's intellectual property,
to cease and desist using variable contracts in a defined benefit
plan, and to return their materials.

On September 26, 2005, Nationwide filed an answer to
the complaint with affirmative defenses and brought a
counterclaim, requesting a declaratory judgment that: (1) the

---

[2] On November 23, 2005, Nationwide filed a second
declaratory judgment action in the Southern District of Ohio for
noninfringement and the invalidity of the patent issued to
Koresko on November 8, 2005.  Civ. A. No. 05-1066.

information disclosed in Koresko's patent application is not
protectable as a trade secret because it is publicly available;
(2) Nationwide has not misappropriated or infringed any of
Koresko's and Penn-Mont's trade secrets or confidential
information; and (3) that Nationwide has not breached the
Confidentiality Agreement.  Nationwide also requests attorneys'
fees and costs.  Koresko and Penn-Mont answered the Counterclaim
Complaint on October 20, 2005, and included affirmative defenses.

On September 26, 2005, Nationwide filed a motion to
transfer the action to the Southern District of Ohio, or to
dismiss or stay the action in favor of the action currently
pending in the Southern District of Ohio.  On October 19, 2005,
Koresko and Penn-Mont filed a motion to reassign the case to
Judge Bruce W. Kauffman in the Eastern District of Pennsylvania.
Koresko and Penn-Mont allege Judge Kauffman has pending before
him an earlier related matter.

II.  DISCUSSION

    A.   <u>Motion to Reassign</u>

Koresko and Penn-Mont request the Court grant their
motion for reassignment, and have the Clerk of Court refer the
matter to the Chief Judge for reassignment to Judge Bruce W.
Kauffman as related to a case currently before Judge Kauffman,
pursuant to Local Rule 40.1(c)(2).  Local Rule 40.1(b)(3)(A)
defines civil cases as related when a case filed involves: (1)

4

property included in another suit; (2) the same issue of fact or grows out of the same transaction as another suit; or (3) the validity or infringement of a patent involved in another suit. Local Rule 40.1(c)(2) provides for the reassignment of related cases if the relationship between a case and a previously filed case is not known until the case is assigned.  The Rule states:

> If the fact of relationship does not become known until after the case is assigned, the judge receiving the later case may refer the case to the Chief Judge for reassignment to the judge to whom the earlier related case is assigned.  If the Chief Judge determines that the cases are related, the Chief Judge shall transfer the later case to the judge to whom the earlier case is assigned; otherwise, the Chief Judge shall send the later case back to the judge to whom it was originally assigned.

Local R. Civ. P. 40.1(c)(2).

The Rule envisions a two-step process.  One, the judge assigned to the later case determines in the first instance whether the case is "related."  If the judge assigned to the later case finds it is not related, the judge will deny the motion to reassign, and that ends the matter.  If, on the other hand, the judge assigned to the later case finds that the case is related, the judge shall refer the case to the Chief Judge for possible reassignment.  Two, if the Chief Judge concurs with the assessment of relatedness by the judge assigned to the later case, the Chief Judge shall reassign the later case to the judge

presiding over the earlier case.[3]  If the Chief Judge disagrees
with the assessment that the cases are related, the case shall be
returned to the judge to whom the later case was assigned.  In
other words, while the judge assigned to the later case may deny
reassignment on his or her own, reassignment from the later
assigned judge to the earlier assigned judge can only be executed
by the Chief Judge.  This procedure protects the integrity of the
court's random assignment system.  See Local Rule 40.1(a),(b).

        Koresko and Penn-Mont contend that the case should be
reassigned because of its relation to Koresko, et al. v.
Bleiweis, et al., Civ. A. No. 04-769 (the "CJA action"), pending
before Judge Kauffman.[4]  Koresko and Penn-Mont state that their
claims in both cases involve the same intellectual property,
namely the Variable 412(i)Plan.  Koresko and Penn-Mont also claim
that each defendant misappropriated trade secrets after viewing
the same presentation (at separate times).  Koresko and Penn-Mont
argue that Judge Kauffman should hear both cases in the interest
of judicial economy because the two cases involve the same issues
of fact.

        On the other hand, Nationwide argues that the motion

_____

        [3] As a practical matter, reassignment always occurs with the
concurrence of the earlier assigned judge.

        [4] On November 8, 2005, defendants in the CJA action filed a
declaratory judgment action against Koresko for noninfringement
and the invalidity of the patent issued to Koresko on November 8,
2005.  Civ. A. No. 05-5862.

for reassignment should be denied because the issues of fact involved are different in both cases.  Nationwide notes that the defendants, the causes of action, and the steps taken by Koresko and Penn-Mont to maintain the confidentiality of the alleged trade secrets are different in each case.  Nationwide also argues that judicial economy would not be fostered if the instant case were reassigned, as discovery in the CJA action is substantially complete.

It is a question of fact whether cases are related for the purpose of assignment.  See Sellers v. Philadelphia Police Commissioner John Timoney, et al., 2002 WL 32348499, at *3 (E.D.Pa. 2002).  "The rule is intended to foster judicial economy by allowing one judge to consider all actions arising out of the same transaction, while avoiding any possible confusion and prejudice that might befall parties if they were directed to the same judge but were pursuing dissimilar actions."  Id.

In Sellers, Judge Pollak was assigned four cases arising out of events that took place during the 2000 Republican National Convention in Philadelphia.  After the first case was assigned to Judge Pollak, plaintiffs in the three later cases designated their cases as "related," to that case, and the three later cases were therefore assigned to Judge Pollak.  Defendants in the later three cases then filed submissions denying the relatedness of the cases and asking that their cases be

reassigned randomly.  Judge Pollak retained two of the three
later-filed cases, but referred one back to the clerk's office
for random reassignment.  The three cases ultimately retained by
Judge Pollak all arose from the same transaction – when arrested,
all plaintiffs in these three cases had been present at a
warehouse at which puppets and floats were being constructed to
protest the RNC.  Although the fourth plaintiff was also arrested
on the same day, while preparing to protest the RNC, his arrest
took place at a different time and place, and under different
circumstances than the arrests of the other three plaintiffs.
Judge Pollak found that the fourth case was not "related" for the
purpose of Local Rule 40.1, because although the fourth plaintiff
may "set forth legal theories similar to those advanced in [the
first case] ... the factual differences between the two cases
render Rule 40.1 inapplicable."  Sellers, 2002 WL 32348499, at
*3.

        Similarly, in this case, although the plaintiffs are
the same in both cases, and both actions involve the alleged
misappropriation of the same confidential information, the
defendants are different, the claims are different, and the
circumstances under which the alleged misappropriation of
confidential information took place are different.  Consequently,
the facts in both cases do not grow out of the same transaction.
See Local Rule of Civil Procedure 40.1(b)(3)(A).  Nor does the

8

fact that Koresko and Penn-Mont allege the violation of a patent,[5] or that the case revolves around the same intellectual property compel a different result.  Neither case is exclusively a patent or an intellectual property case.  Rather, the central issue in both cases is not whether there is a valid patent or whether plaintiffs hold any rights in a protectable trade secret, but whether the defendants' conduct in each case infringed upon the alleged patent or otherwise breached a confidentiality agreement.  See id.  Accordingly, the cases are not related, and the motion for reassignment will be denied.

      B.   <u>Motion to Transfer, Dismiss, or Stay</u>

      Nationwide moves to transfer this action to the Southern District of Ohio, or, in the alternative, to dismiss or stay this action in favor of the earlier suit filed by Nationwide in the Southern District of Ohio.  On June 22, 2005, Nationwide commenced an action in the Southern District of Ohio against Penn-Mont and Koresko seeking a declaratory judgment that the information in the patent application filed by Koresko is not protectable as a trade secret, and that Nationwide has not misappropriated or infringed Penn-Mont's or Koresko's trade secrets or confidential information.  <u>Nationwide Life Ins. Co. v. Penn-Mont Benefit Servs. and John J. Koresko, V</u>, Civ. A. No. 05-

---

[5] The patent was issued November 8, 2005.

604.[6]  Penn-Mont and Koresko thereafter filed a praecipe for writ
of summons in Pennsylvania state court on June 23, 2005.[7]
Nationwide argues that the Ohio action is the first-filed action,
and that the Court should transfer this action to the Southern
District of Ohio, or, in the alternative, dismiss or stay the
present proceedings.

        Penn-Mont and Koresko argue that the case should not be
transferred because: (1) the parties signed a Confidentiality
Agreement containing a forum selection clause choosing the
Eastern District of Pennsylvania and a choice of law clause
choosing Pennsylvania law in the event of litigation; (2) the
case should be reassigned to Judge Kauffman in the Eastern
District of Pennsylvania as related to the CJA action; and (3)
Nationwide's filing was an improper anticipatory filing to which
the first-filed rule should not apply.

        The first-filed rule dictates that "in cases of federal
concurrent jurisdiction involving the same parties and same
issues, the court of first-filing must proceed to decide the
matter." Southampton Sports Zone v. Probatter Sports, 2003 WL
22358439, at *4 (E.D.Pa. 2003) (citing Zelenkofske v. Stevenson,

        [6] A complaint and an amended complaint have been filed in
the Ohio action.  An answer has not yet been filed.

        [7] Penn-Mont and Koresko filed a complaint in this federal
action on September 6, 2005, after defendant removed the action
and the Court held an initial pretrial conference and issued a
scheduling order.

1999 WL 592399, at *2 (E.D.Pa. 1999)); <u>see also</u> <u>Crosley Corp. v.
Hazeltine Corp.</u>, 122 F.2d 925, 929-30 (3d Cir. 1941) ("In all
cases of concurrent jurisdiction, the court which first has
possession of the subject must decide it." (citation omitted)).

      Courts have discretion to depart from the first-filed
rule in certain circumstances.  For example, a departure may be
warranted if extraordinary circumstances are present, or a party
has acted inequitably, acted with an eye to forum shopping,[8] or
acted with bad faith.  <u>See</u> <u>EEOC v. University of Pennsylvania</u>,
850 F.2d at 972; <u>IMS Health, Inc. v. Vality Technology Inc.</u>, 59
F. Supp.2d 454, 462-63 (E.D. Pa. 1999).  Courts have also granted
exceptions to the rule when the second-filed action is further
along than the first action, and "when the first-filing party
instituted suit in one forum in anticipation of the opposing
party's imminent suit in another less favorable forum."  <u>EEOC v.
University of Pennsylvania</u>, 850 F.2d at 976.  There is some
disagreement among district courts regarding the deference courts
should pay to the first-filed rule.  <u>Compare</u> <u>Southampton Sports
Zone, Inc. v. Probatter Sports, LLC</u>, 2003 WL 22358439, at *4
(E.D. Pa. 2003) (Departures from the first-filed rule are rare,
and "the second action should proceed only in unusual or

---

     [8] As used in the context of the first-filed rule, forum
shopping refers to the selection of a forum based on the
favorableness of the forum's substantive law, not merely based on
considerations of convenience.  <u>See</u> <u>EEOC v. University of
Pennsylvania</u>, 850 F.2d 969.

exceptional circumstances"), with FMC Corp. v. Amvac Chemical Corp., 379 F. Supp.2d 733, 744 (E.D. Pa. 2005) (exceptions to the first-filed rule are not rare and are made where justice or expediency so requires (citing Drugstore Direct, Inc. v. The Cartier Div. of Richemont North America, Inc., 350 F. Supp.2d 620, 623 (E.D. Pa. 2004)).  On balance, due consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule.

   Here, it is uncontested that the Ohio action is the first-filed action.  Nationwide's Complaint was filed in the Ohio action on June 22, 2005, and Koresko and Penn-Mont filed their praecipe and writ of summons in the Pennsylvania state action on June 23, 2005.  Although there is some issue whether Koresko and Penn-Mont were properly served in the Ohio action, "the first-filed rule, as its name indicates, is premised upon a priority of filing the complaint--not upon a priority of serving the complaint."  Peregrine Corp. v. Peregrine Industries, Inc., 769 F. Supp. 169, 172 (E.D. Pa. 1991).  The question here, therefore, is whether the Court should depart from the first-filed rule and maintain jurisdiction over this action, as opposed to transferring it to Ohio, or dismissing or staying the action in favor of the first-filed case.

1.   <u>The forum selection clause</u>

First, Koresko and Penn-Mont argue that the Court should depart from the first-filed rule because the Confidentiality Agreement signed by Nationwide and Koresko in June 2002 contains a clause selecting Pennsylvania as the forum in which litigation would take place.  The clause in the Confidentiality Agreement reads as follows:

> This Agreement and performance hereunder shall be governed by the law of the Commonwealth of Pennsylvania.  The parties agree to venue and personal jurisdiction in the state or federal courts located in the Eastern District of Pennsylvania.

(Compl., Ex. A.)  Nationwide argues that this forum selection clause is permissive – providing for consent to jurisdiction – not exclusive, which would preclude jurisdiction in all other courts.

It is clear from the language of the clause that the parties did not intend to vest exclusive jurisdiction in the Pennsylvania courts.  "Where parties enter into a contract and merely consent to jurisdiction in a particular forum, they do not preclude the jurisdiction of other forums."  <u>Polsky v. Hall City Centre Associates Ltd. P'ship</u>, 1989 WL 48109, at *3 (E.D.Pa. 1989).  <u>See</u> <u>Pep Boys - Manny, Moe & Jack v. American Waste Oil Servs. Corp.</u>, 1997 WL 367048, at *7 (E.D.Pa. 1997) (forum selection clause consenting to jurisdiction in Pennsylvania did not provide exclusive jurisdiction).  Koresko and Penn-Mont

13

conflate the concept of forum selection with that of consent to
venue and personal jurisdiction.  Where the former provides that
all litigation under the contract must be brought in the selected
forum, the latter permits but does not compel that the action be
brought in a particular jurisdiction.

Koresko and Penn-Mont argue, however, that the clause
was intended to be exclusive.  They support their argument with
an affidavit by Koresko that avers that it "was intended that the
forum clause in the Confidentiality Agreement vest exclusive
jurisdiction and venue in this [E.D.Pa.] district."  Koresko Aff.
¶ 37.  If an issue is raised that a seemingly unambiguous
contractual clause is actually unclear, "the court 'should hear
the evidence presented by both parties and then decide whether
'there is objective indicia that, from the linguistic reference
point of the parties, the terms of the contract are susceptible
of different meanings'."  Compass Technology, Inc. v. Tseng
Laboratories, Inc., 71 F.3d 1125, 1131-32 (3d Cir. 1995) (quoting
Mellon Bank, N.A. v. Aetna Business Credit, 619 F.2d 1001, 1011
n. 12 (3d Cir. 1980)).  The burden is on the party claiming the
existence of the ambiguity to "show that a contract is reasonably
or fairly susceptible of different constructions and is capable
of being understood in more senses than one and is obscure in
meaning through indefiniteness of expression or has a double
meaning."  Compass Technology, 71 F.3d at 1132.  "In ascertaining

the intent of parties, 'it is their outward and objective
manifestations of assent, as opposed to their undisclosed and
subjective intentions, that matter.'" <u>Prusky v. Prudential
Insurance Co. of America</u>, 2001 WL 34355665 (E.D.Pa. 2001)
(quoting <u>Espenshade v. Espenshade</u>, 729 A,2d 1239, 1243 (Pa.
Super. Ct. 1999).

An affidavit by a party that it was his subjective
intent to vest Pennsylvania with exclusive jurisdiction is not
admissible to prove the parties' intent.[9]   <u>See, e.g.</u>, <u>Williams v.
Metzler</u>, 132 F.3d 937, 947 (3d Cir. 1997) (an inquiry into the
intent of the parties "does not require a search for the
subjective intent of the parties").  Given the relatively
unambiguous language in the forum selection clause here, and the
lack of objective evidence suggesting an agreement as to
exclusive jurisdiction, Koresko and Nationwide have failed to
satisfy their burden that the Confidentiality Agreement vests
Pennsylvania with exclusive jurisdiction.

2.   <u>The anticipatory nature of Nationwide's filing</u>

Next, Koresko and Penn-Mont ask the Court to depart

---

[9] To the extent that Koresko and Penn-Mont argue that
jurisdiction would lie in the Eastern District of Pennsylvania
regardless of the forum selection clause, and therefore the
clause would have been superfluous if it did not intend to vest
Pennsylvania with exclusive jurisdiction, this argument has
slight probative value.

from the first-filed rule because Nationwide's Ohio filing was an improper anticipatory filing to which the first-filed rule should not apply.  Koresko and Penn-Mont argue that the improperly anticipatory nature of the Ohio lawsuit is evidenced by: (1) the use of a declaratory judgment action, and (2) the fact that the suit was filed within the response period of plaintiff's cease and desist letter.[10]

The fact that the Ohio action is a declaratory judgment action does not in and of itself merit a departure from the first-filed rule.  Although the "use of a declaratory judgment action may demonstrate the anticipatory and preemptive nature of a first-filed suit," the first-filed rule has "routinely been applied to cases where the first-filed case is an action for declaratory judgment."  Pep Boys, 1997 WL 367048, at *6.  Some evidence that a first-filed case was filed for the purpose of forum shopping or in bad faith is necessary before courts find it was improperly anticipatory, and therefore warranted a departure from the first-filed rule.[11]

---

[10] "The lines between forum shopping, bad faith and anticipatory lawsuit are often blurred because bad faith cases typically include a race to the courthouse, and anticipatory lawsuits invariably involve a dispute over choice of forum.  In fact, some courts view anticipatory lawsuits as an 'aspect of forum shopping.'" Russell B. Hill, Should Anticipation Kill Application of the Declaratory Judgment Act?, 26 T. Jefferson L. Rev. 239, 248 (2004).

[11] In EEOC v. University of Pennsylvania, the Equal Employment Opportunity Commission ("EEOC") brought an action in

Here, no substantive advantage would inure to Nationwide from litigating the case in Ohio. The parties agree that Pennsylvania substantive law applies whether the case is litigated in Ohio or Pennsylvania. Therefore, Ohio is not a less favorable forum than Pennsylvania for plaintiffs.

Koresko and Penn-Mont also argue that the fact that Nationwide brought its suit within the response time of Koresko's

---

the Eastern District of Pennsylvania to enforce a subpoena against an employer, the University of Pennsylvania (the "University"), after the University refused to release confidential peer review materials. 850 F.2d 969 (3d Cir. 1988), aff'd, University of Pennsylvania v. EEOC, 493 U.S. 182 (1990). The University requested the district court in Pennsylvania to dismiss the enforcement suit in favor of a suit filed earlier by the University in the United States District Court for the District of Columbia. The University's earlier filed suit challenged the EEOC's nationwide policy of requiring disclosure of confidential peer review materials under the First and Fifth Amendments, and was filed during the grace period the EEOC had given the University to respond to its subpoena.

The Third Circuit affirmed the decision of the district court to deny the motion to dismiss and to maintain jurisdiction over the enforcement action. Recognizing that "exceptions to the [first-filed] rule are rare," the Third Circuit then proceeded to list circumstances in which exceptions should be made:

"Bad faith ... and forum shopping have always been regarded as proper bases for departing from the rule. Similarly, courts have rejected the rule when the second-filed action had developed further than the initial suit ... and when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum."

850 F.2d at 977. The Pennsylvania district court did not abuse its discretion, held the Third Circuit, because the timing of the University's action evidenced a desire to preempt an imminent subpoena action, and the University admitted it believed the law of the District of Columbia would be more favorable to its position than that of the Eastern District of Pennsylvania. Id.

cease-and-desist letter evidences an improper anticipatory filing.  On June 8, 2005, Koresko wrote to an employee of Nationwide, John Keenan, informing Keenan that Nationwide may be infringing claims found in Koresko's patent application.[12]  There was some email communication between employees at Nationwide and Koresko, and on June 10, 2005, John T. Harmon, the Assistant General Counsel for Nationwide, sent a letter to Koresko informing him that he had begun an analysis of Koresko's patent claims.  On June 15, 2005, Koresko sent a cease-and-desist letter to Nationwide stating his intention to seek injunctive relief against Nationwide unless the matter was resolved before June 30, 2005.  Nationwide then filed its Ohio suit on June 23, 2005.

Courts may consider whether a filing preemptively foreclosed settlement negotiations when determining if a first-filed suit was commenced in bad faith.  See, e.g., IMS Health, Inc. v. Vality Technology Inc., 59 F. Supp.2d 454, 463 (E.D.Pa. 1999).  "[A] second-filing party may have a strong case that the initial filing was improper if the first-filing party initiated its suit within the response period provided in a recent cease-and-desist letter."  FMC Corp., 379 F. Supp.2d 733, 744 (E.D.Pa. 2005); see also Kim v. Kim, 324 F. Supp.2d 628, 636 (E.D.Pa. 2004).

In FMC Corp., the court declined to apply the first-

_____

[12] This patent was issued on November 8, 2005.

filed rule, finding that numerous exceptions applied.  The court determined that the first-filer "wished to circumvent the Court's jurisdiction over the instant matter as a 'related action,'" and had engaged in inequitable conduct and bad faith by filing suit during ongoing settlement discussions, within the response time of the opposing side's cease-and-desist letter.  379 F. Supp.2d at 745.  The court also noted that the first-filer filed on the day before the Memorial Day holiday weekend, and did not inform the lawyers with whom it had been negotiating of its commencement of an action.  Id. at 748.  In departing from the first-filed rule, the court in FMC found that "the facts establish that each of the types of inequitable conduct from [EEOC v. University of Pennsylvania] exist within the instant record."[13]  Id. at 749.

The exceptions to the first-filed rule present in FMC are absent here.  Here, Mr. Koresko's demand letter of June 15, 2005 contained a large financial demand,[14] a short time-frame for resolution, and a threat of litigation.  The letter was sent in response to a communication from Nationwide's counsel that Nationwide was beginning an assessment of the situation and Mr. Koresko's claim of misappropriation.  Under these circumstances,

---

[13] The types of inequitable conduct listed in FMC are extraordinary circumstances, inequitable conduct, bad faith, forum shopping, and anticipatory filing.  379 F. Supp.2d at 745.

[14] In his June 15, 2005 letter, Mr. Koresko requested "at least $1.5 million" for an initial license fee, and an ongoing fee based on a percentage of sales.

the party at the receiving end of a financial ultimatum is not
required to unilaterally disarm and allow the party asserting the
demand to control the choice of forum.  This is particularly so,
given that Nationwide's choice of forum is reasonable and will
not unduly vex or burden plaintiffs' ability to litigate this
matter.  Nationwide filed its declaratory judgment action in the
Southern District of Ohio, where Nationwide has its principal
place of business and where the contested events regarding the
disclosure of plaintiffs' alleged trade secrets took place.
Under these circumstances, unlike in <u>FMC</u>, Nationwide's conduct
does not add up to bad faith or inequitable conduct.

          Once it is determined that the first-filed rule
applies, and no exceptions counsel against its application, the
court must determine an appropriate remedy.  First, the case may
be dismissed without prejudice or stayed for the duration of the
first-filed matter.  <u>See</u> <u>Kerotest Mfg. Co. v. C-O-Two Fire</u>
<u>Equipment Co.</u>, 342 U.S. 180, 183-84 (affirming decision to stay
second-filed action by district court where second action was
brought; the disposition of the conduct of multiple litigation in
the federal judicial system is up to discretion of the trial
judge) (cited in <u>Adam v. Jacobs,</u> 950 F.2d 89, 92 (2d Cir. 1991)
(the "decision whether or not to stay or dismiss a proceeding
[pursuant to the first-filed rule] rests within a district
judge's discretion."); <u>see also</u> <u>Stone Creek Mechanical, Inc. v.</u>

20

Carnes Co., Inc., 2002 WL 31424390, at *4 (E.D.Pa. 2002) (second-filed case dismissed without prejudice).

Alternately, the second-filed case can be transferred to the forum where the first-filed case was brought, consistent with the requirements of 28 U.S.C. § 1404(a). See Southampton Sports Zone, Inc. v. Probatter Sports, LLC, 2003 WL 22358439, at *5 (E.D.Pa. 2003) (under first-filed rule, presence of related case in another forum warrants transfer under § 1404(a)); Zelenkofske v. Stevenson, 1999 WL 592399, at *4 (E.D.Pa. 1999) (under first-filed rule, "existence of a prior related action in the transferee district is a strong factor weighing in favor of transfer in the interest of judicial economy.").

Section 1404(a) provides for a case to be transferred in the interest of justice to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses." A § 1404(a) analysis includes an assessment of the public and private interests involved in the choice of forum. The private interests to be considered may include: (a) the plaintiff's forum preference; (b) the defendant's preference; (c) where the claim arose; (d) the convenience of the parties; (e) the convenience of the witnesses to the extent the witnesses may be unavailable in one of the fora; and (f) the location of necessary books and records. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

The public interests to be considered may include: (a) the enforceability of the judgment; (b) practical considerations; (c) the administrative difficulty in each fora resulting from court congestion; (d) the local interest; (e) the public policies of the fora; and (f) the familiarity of the trial judge with the applicable law.  Id.  Although the plaintiff's choice of forum should not be lightly disregarded, the Third Circuit has emphasized that "there is no definite formula or list of the factors to consider."  Id.

Here, neither dismissal nor a stay would serve the interest of the parties in having their issues resolved promptly. Transfer, on the other hand, is warranted.  Nationwide has its principal place of business in Ohio, the events surrounding Koresko's and Penn-Mont's claims took place in Ohio, and there is already pending a declaratory judgment case involving the same parties and issues in Ohio which is in its very preliminary stages.  The fact that a prior related action is before the Southern District of Ohio weighs heavily in the Court's § 1404(a) determination.[15]  Therefore, both the private and public factors counsel in favor of transfer.

---

[15] Koresko and Penn-Mont also argue that the first-filed rule should not apply for reasons of judicial economy because the case should be reassigned to Judge Kauffman.  This issue was decided adversely to Koresko and Penn-Mont above.

22

III. CONCLUSION

For the foregoing reasons, the Court will deny the motion to reassign the case to Judge Kauffman and grant the motion to transfer the case to the Southern District of Ohio, pursuant to the first-filed rule.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN J. KORESKO, V,          :      CIVIL ACTION
et al.,                      :      NO.  05-3800
                             :
          Plaintiffs,        :
                             :
          v.                 :
                             :
NATIONWIDE LIFE,             :
INSURANCE COMPANY,           :
                             :
          Defendant.         :

O R D E R

**AND NOW**, this **6th** day of **December 2005,** upon consideration of Plaintiffs' Motion to Reassign Case (doc. no. 15) and Defendant's Motion to Transfer, Dismiss, or Stay (doc. no. 11), and after a hearing at which counsel for both parties participated, it is hereby **ORDERED** that:

1.   Plaintiffs' Motion to Reassign (doc. no. 15) is **DENIED;**

2.   Defendant's Motion to Transfer, Dismiss, or Stay (doc. no. 11) is **GRANTED;**

3.   Defendant's Motion for Leave to File Reply Brief (doc. no. 17) is **GRANTED;**

4.   Plaintiffs' Motion for Leave to File Sur-Reply Memorandum of Law (doc. no. 24) is **GRANTED;** and

5.   Plaintiffs' Motion for Leave to File Reply Memorandum of Law (doc. no. 25) is **GRANTED.**

**IT IS FURTHER ORDERED** that the case shall be **TRANSFERRED** to the Southern District of Ohio (Columbus), and the Clerk shall deliver

24

the case file and a certified copy of the docket to the Clerk for the Southern District of Ohio (Columbus).[16]

**AND IT IS SO ORDERED.**

_____

**EDUARDO C. ROBRENO, J.**

_____

[16] The case should be marked as related to <u>Nationwide Life Insurance Co. v. Penn-Mont Benefit Services, et al.</u>, Civ. A. No. 05-604.